**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 13–cv–01188–RM

HALLIE NEWTON,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

---

**ORDER**

---

      This matter is before the Court on Plaintiff Hallie Newton's ("Plaintiff") request for judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) Plaintiff challenges the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, by which she denied Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") respectively under Titles II and XVI of the Social Security Act ("Act"). The Administrative Law Judge ("ALJ") ruled Plaintiff was not disabled within the meaning of the Act and therefore not entitled to DIB or SSI.

      The Commissioner provided the Court with the administrative record. (ECF Nos. 13; 13-1; 13-2; 13-3; 13-4; 13-5; 13-6; 13-7; 13-8; 13-9; 13-10.) The parties have fully briefed the matter and it is ripe for adjudication. (ECF Nos. 19; 20; 21.)

      For the reasons set forth below, the Court vacates Defendant's denial of Plaintiff's DIB and SSI applications and remands for further proceedings consistent with this Order.

## I.      BACKGROUND

Plaintiff applied for DIB and SSI in August 2010, alleging she was disabled as of December 31, 2007, due to the following conditions that limit her ability to work: bipolar II, depression, and attention deficit hyperactivity disorder ("ADHD").  (Admin. R. ("Tr.") at 61, 141-154.)  After Plaintiff's applications were initially denied, Plaintiff requested a hearing before an ALJ.  (Tr. 60, 87.)  The ALJ denied Plaintiff's applications.  (Tr. 9-30.)  Plaintiff requested review of the ALJ's decision and, in March 2013, the Appeals Council denied such review.  (Tr. 1-8.)  Plaintiff timely requested review before the Court.

### A.      Background and Relevant Medical Evidence

Plaintiff was born in 1977.  (Tr. 141.)  Plaintiff has a high school education.  (*See* Tr. 35.)  Plaintiff does not have past relevant work history.

Plaintiff claims she became disabled as of December 31, 2007 due to mental health impairments.  (Tr. 33, 35.)

#### 1.      Treatment Notes

Prior to Plaintiff's December 31, 2007 alleged onset date, Plaintiff went to the Holden Psychiatric Institute for treatment in 2006.  (Tr. 440-48.)  Plaintiff was hospitalized in January 2007 for suicidal ideations after using marijuana and hallucinogenic mushrooms.  (Tr. 238-57.)  Plaintiff reported to her providers at the Holden Psychiatric Institute that she did not know when she was lying and when she was not lying.  (Tr. 238-39.)  Providers noted that Plaintiff was "using confabulation to confuse and hide memory deficits" and that her "storyline change[d] from person to person and when confronted, [Plaintiff] believe[d] whatever she has said at the last interval."  (Tr. 253.)  Plaintiff was discharged with the diagnoses of psychotic disorder, polysubstance dependence, and ADHD.  (Tr. 256.)

In 2009, Plaintiff began receiving treatment at the Mental Health Center of Boulder County.  Jean-Marc Wong, M.D, and associated staff treated Plaintiff as her psychiatrist in 2010 and 2011.  (Tr. 295-96, 373, 502-03, 292-93, 290-91, 287-88, 363-64, 331, 361-62, 489-90, 359-60, 355-56, 353-54, 351-52, 348, 349, 348, 346-47, 345, 343-44, 475-76.)  Dr. Wong's treatment notes indicate that Plaintiff's medical issues, at times, were severe and, at times, were under control.  For example, Dr. Wong's notes show that in early 2010, Plaintiff reported that her anxiety and depression were worse because of pending check fraud charges.  (Tr. 295.) Similarly, Plaintiff reported being anxious and depressed while incarcerated from April to July 2010 as well as shortly after her release from jail.  (Tr. 287-88, 290-93, 502-03.)  During one treatment session with Dr. Wong, Plaintiff admitted that she lies a lot.  (Tr. 293.)  Contrastingly, in late 2010, Plaintiff reported that she was "okay," "calm," "stable," denied depression, and had only mild symptoms of anxiety and inability to concentrate.  (Tr. 331, 361, 363-64.)  In January 2011, Plaintiff reported that she was more anxious and depressed due to stress over giving birth and caring for a newborn; she also reported, however, that she was feeling "good and stable, has never felt this good or as strong before" and was off of her medications.  (Tr. 359-60.) Subsequently, Plaintiff reported she was feeling less stable over stress at her job (Tr. 355-56), was depressed over relinquishing parental rights to her first daughter (Tr. 353-54), and was having difficulty concentrating (Tr. 353-54).  Plaintiff gave birth to a second daughter in May 2011 and reported feeling depressed.  (Tr. 350.)  Dr. Wong prescribed Plaintiff medications and adjusted them throughout mid-2011.  (Tr. 346-50.)  In the fall of 2011, Plaintiff was "not as depressed as [she] used to be."  (Tr. 343-45.)  In December 2011, however, Plaintiff reported that she was depressed, hopeless, anxious, and could not concentrate.  (Tr. 475-76.)

In 2010 and 2011, Plaintiff also saw Elisha Luca, Ph.D., and Erica Brann, LCSW, each of whom are associated with the Boulder Mental Health Center.  (Tr. 395-438, 468-69.)

From March to August 2010, Plaintiff received medical treatment at Boulder County Jail for ADHD, depression, and bipolar disorder.  (Tr. 300-25.)

      2.   <u>Opinion Evidence</u>

In October 2010, Jacqueline Richman, Psy.D., performed a psychological evaluation of Plaintiff for Plaintiff's parole officer.  (Tr. 451-60.)  Dr. Richman noted that Plaintiff had an "extensive history of lying to others in order to manipulate their perceptions and behaviors in her favor" based on Plaintiff's inconsistent reports to various treating professionals.  (Tr. 452-53.)  Dr. Richman noted that the validity of information obtained as part of her evaluation was questionable and may contain distortions, exaggerations, and omissions.  (Tr. 452-53.)  Dr. Richman diagnosed Plaintiff with bipolar disorder and a personality disorder as well as possible post-traumatic stress disorder ("PTSD") and schizoaffective disorder.  (Tr. 459.)  Dr. Richman opined that Plaintiff was prone to reality distortion; relied on interpersonal manipulation and denial; and had hypomanic episodes marked by poor judgment and inappropriate behavior.  (Tr. 459.)  Dr. Richman further opined that some of Plaintiff's behavior stemmed from her mental diagnoses but that "some of it arises from intentional plans to defraud others and suggests the presence of sociopathic tendencies."  (Tr. 459.)

In November 2010, Michelle Warfield, Ph.D., recorded a psychological evaluation of Plaintiff in connection with her disability application.  (Tr. 333-37.)  Dr. Warfield diagnosed Plaintiff with bipolar disorder, limited PTSD symptoms, and obsessive compulsive disorder.  (Tr. 336-37.)  Dr. Warfield opined that Plaintiff has no difficulty understanding, comprehending, and carrying out simple instructions as well as, based on her level of education, no difficulty in

understanding, comprehending, and carrying out complex instructions, but that she could have severe difficulty in doing so during manic or depressive episodes.  (Tr. 337.)

Also in November 2010, state agency psychologist Mark Berkowitz, Psy.D., reviewed Plaintiff's medical records and found that there was insufficient evidence to assess the severity of Plaintiff's mental impairments prior to September 30, 2008.  (Tr. 64-67, *see* Tr. 74-78.)

In November 2011, Dr. Wong completed a medical assessment of Plaintiff's ability to do work-related activities.  (Tr. 464-66.)  Dr. Wong opined that Plaintiff had fair ability to follow rules, use judgment, follow simple job instructions and poor to no ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stress, function independently, maintain attention, handle both detailed but not complex and complex job instructions, behave in an emotionally stable manner, and demonstrate reliability.  (Tr. 464-66.)

Dr. Lucas testified at the hearing before the ALJ.  (Tr. 45.)  Dr. Lucas testified that Plaintiff's diagnoses were bipolar disorder, generalized anxiety disorder, ADHD, and PTSD. (Tr. 46-48.)  Dr. Lucas testified that Plaintiff had no ability to concentrate, focus on, and complete tasks in a timely manner (Tr. 49); no ability to handle stress (Tr. 50); no ability to be reliable and show up to work (Tr. 51); no ability to get along with supervisors (Tr. 51); and a poor ability to get along with coworkers (Tr. 51).  Dr. Lucas further opined that she did not think Plaintiff could perform any kind of work at the moment.  (Tr. 53-54.)

B.     **The ALJ's Decision**

On March 9, 2012, ALJ Jennifer B. Millington issued her decision at issue in this matter denying Plaintiff DIB and SSI.  (Tr. 12-26.)  In reaching her decision, ALJ Millington followed the five-step sequential evaluation process for evaluating disability claims.  (Tr. 14-26.)  ALJ Millington found that Plaintiff met the insured status requirements of the Act through September

30, 2008 and has not engaged in substantial gainful activity on or after December 31, 2007.  (Tr.

14.)  ALJ Millington found that Plaintiff has the following severe impairments:  bipolar disorder,

generalized anxiety disorder, post-traumatic stress disorder, and attention deficit hyperactivity

disorder.  (Tr. 15.)  ALJ Millington found that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals one of the listed impairments in

Appendix 1 of the Social Security Regulations.  (Tr. 15-16.)  ALJ Millington found Plaintiff's

residual functional capacity ("RFC") to be as follows:

> to perform a full range of work at all exertional levels but with the following
> nonexertional limitations:  The claimant can understand, remember and carry out
> routine, repetitive tasks taking up to 3 months to learn (which includes semi-
> skilled, SVP 3 work), occasionally have work interactions with supervisors and
> co-workers, and rarely to never have work interactions with the general public.

(Tr. 16.)  ALJ Millington found that Plaintiff has no past relevant work.  (Tr. 24.)

Based on the vocational expert's testimony, which in turn was predicated on ALJ

Millington's functional capacity determination and in consideration of Plaintiff's age and

education, ALJ Millington found that Plaintiff could perform jobs that exist in significant

numbers in the national economy.  (Tr. 24-25.)  The jobs include kitchen helper, production

assembler, and housekeeping cleaner.  (Tr. 25.)

Therefore, ALJ Millington found that Plaintiff was not disabled.  (Tr. 25-26.)

C.    **Procedural History**

Plaintiff appealed the ALJ's decision at issue in this matter.  (Tr. 7-8.)  On March 11,

2013, the Appeals Council denied Plaintiff's request for review.  (Tr. 1-6.)  Plaintiff appeals that

decision by bringing this lawsuit.  (ECF No. 1.)

## II.   LEGAL STANDARDS[1]

### A.   Standard of Review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).  Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*.  "It requires more than a scintilla, but less than preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Although a district court will "not reweigh the evidence or retry the case," it "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g).  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the agency.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  As the Tenth Circuit Court of Appeals observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues."  *Id.* at 479-480 (citations omitted).  This duty exists even when the claimant is represented by counsel.  *Id.* at 480 (citation omitted).

Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and

---

[1] Many C.F.R. citations are to part 404—which addresses DIB claims.  All cited regulations have parallel citations in part 416—which addresses SSI claims.

internal quotation marks omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) ("[T]he Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal.").

**B.   Evaluation of Disability**

The criteria to obtain DIB under Title II of the Act are that a claimant meets the insured status requirements, is younger than 65 years of age, files an application for a period of disability, and is under a "disability" as defined under Title II of the Act.  42 U.S.C. §§ 416(i), 423(a); *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).  In addition, the individual's disability must have begun before his or her disability-insured status has expired.  20 C.F.R. § 404.101; Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8 (1983).

The criteria for SSI payments under Title XVI of the Act are determined on the basis of the individual's income, resources, and other relevant characteristics.  42 U.S.C. § 1382(c)(1).  In addition to being financially eligible, the individual must file an application for SSI and be under a disability as defined in the Act.  42 U.S.C. § 1382.

The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not [fewer] than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (definition for benefits under SSI); *see also* 42 U.S.C. § 423(d)(2)(A) (definition for benefits under DIB); *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

There is a five-step sequent for evaluating a disability.  *See* 20 C.F.R. §§ 404.1520, 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis).  If it is determined that a claimant is or is not disabled at any point in the analysis, the analysis ends.

*Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(a)(4)(i). Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *Id*. at §§ 404.1520(c), 416.920(a)(4)(ii). Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled. *Id*. at §§ 404.1520(d), 416.920(a)(4)(iii). If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to fourth step. Fourth, the claimant must show that the "impairment prevents [him or her] from performing work [he or she] has performed in the past." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *accord* 20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv). If the claimant is able to perform his or her previous work, he or she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv). Fifth, the Commissioner must demonstrate: (1) that based on the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(a)(4)(v).

## III. ANALYSIS

Plaintiff raises several issues for the Court's consideration, including: (1) that the ALJ erred by not giving proper weight to Plaintiff's treating physicians (ECF No. 19 at 9-20); and (2) that the ALJ erred by not formulating a RFC for Plaintiff that includes all of her limitations (ECF No. 19 at 20-22).

For the below stated reasons, because the Court finds that the ALJ committed legal error with respect to Plaintiff's treating physicians, the Court VACATES Defendant's decision.

Because this error alone requires remand, the Court does not address the other arguments raised by Plaintiff. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, the court declined to address other issues raised on appeal); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."). The Court expresses no opinion as to Plaintiff's other arguments and neither party should take the Court's silence as tacit approval or disapproval of how the evidence was considered. The Court does not intend by the opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties as well as the ALJ to consider all of the evidence and the issues anew.

A.    **The ALJ Erred by Failing to State the Weight Given to Plaintiff's Treating Physicians' Medical Opinions and By Speculating as to the Reasons for their Opinions**

Plaintiff argues that the "ALJ erred in rejecting the opinion of [Plaintiff's] treating physician[s]." (ECF No. 19 at 10.) Specifically, Plaintiff argues that the ALJ erred by not giving controlling weight to Dr. Wong's medical opinion (ECF No. 19 at 17-18) and Dr. Lucas's medical opinion (ECF No. 19 at 18-19.) As a subspecies of Plaintiff's argument regarding the ALJ's error in not giving controlling weight to either Dr. Wong or Dr. Lucas's medical opinions, Plaintiff argues that the ALJ committed further error by rejecting the opinion based upon speculation (ECF No. 19 at 17-19). Defendant argues that "[b]ecause the ALJ adequately explained the weight given to Dr. Lucas's and Dr. Wong's opinions and the reasons for that

weight, her decision should not be disturbed on review."  (ECF No. 20 at 12.)  The Court finds

merit to Plaintiff's position.

An ALJ is "required to give controlling weight to a treating physician's opinion about the

nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis,

and any physical or mental restrictions, if 'it is well supported by clinical and laboratory

diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'"

*Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted); *see also* 20 C.F.R. §

404.1527(d)(2); *see also* SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996) (stating that "a

finding that a treating source medical opinion is not well-supported by medically acceptable

clinical and laboratory diagnostic techniques or is inconsistent with the other substantial

evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not

that the opinion should be rejected [and that] treating source medical opinions are still entitled to

deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and

416.927").

The Tenth Circuit Court of Appeals has held that the "in evaluating the medical opinions

of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each

step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

Under the two step analysis, "[t]he initial determination the ALJ must make with respect to a

treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded

'controlling weight,' on the matter to which it relates." *Id*. (citing *Watkins*, 350 F.3d at 1300).  If

an ALJ finds deficiencies in the treating physician's medical opinion to resolve the controlling-

weight question against a claimant, that does not end the inquiry. *Id*. Rather, "[e]ven if a

treating opinion is not given controlling weight, it is still entitled to deference; at the second step

in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id*. (citing *Watkins*, 350 F.3d at 1300-01). "If this is not done, a remand is required." *Id*. (citation omitted). "Thus, a deficiency as to the conditions for controlling weight *raises the question* of how much weight to given the opinion, it does not resolve the latter, distinct inquiry." *Id*. at 1330-31 (emphasis in original) (citing *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004) (holding that while the absence of objective testing provided a basis for denying controlling weight to a treating physician's opinion, "[t]he ALJ was not entitled, however, to completely reject [it] on [that] basis")). This second inquiry is governed by its own set of factors, summarized as follows:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole;(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id*. at 1331 (citing *Langley*, 373 F.3d at 1119); *see also* 20 C.F.R. § 404.1527(d)(2). Although the ALJ need not discuss each factor, *see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2008), she "must be 'sufficiently specific' to permit meaningful" review. *Guilano v. Colvin*, 577 F. App'x 859, 861-62 (10th Cir. 2014) (unpublished) (quoting *Watkins*, 350 F.3d at 1301); *see also Krauser*, 638 F.3d at 1331 ("In applying these factors, the ALJ's findings must be 'sufficiently specific to make clear to any subsequent reviewers the weight [she] gave to the treating source's medical opinion and the reason for that weight.'")

Thus, if one or both of the conditions for giving a medical opinion controlling weight "is lacking, an ALJ is not free to simply disregard the opinion or pick and choose which portions to

adopt." *Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009) (unpublished). "Instead, the ALJ must proceed to a second determination, where the ALJ must both (1) weigh the opinion 'using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927' and (2) 'give good reasons in the notice of determination or decision for the weight [the ALJ] ultimately assigns the opinion.'" *Id.* (quoting *Watkins*, 350 F.3d at 1300-01 (internal quotation marks and alteration omitted)). "The decision must articulate the ALJ's reasoning such that later reviewers can identify both the weight that was actually assigned to the opinion and the reasons for that weight." *Id.* at 719 (citing SSR 96-2p, 1996 WL 374188, at *5). "[I]f an ALJ fails to explain how she assessed the weight of the treating physician's opinion, a court cannot presume she actually applied the correct legal standards when considering the opinion." *Larkins ex rel. M.D. v. Colvin*, 568 F. App'x 646, 649 (10th Cir. 2014) (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)); *Langley*, 373 F.3d at 1119 (holding that an ALJ's reasons must be sufficiently specific to make clear to any subsequent reviewers the weight given to the medical opinion, and the reasons for that weight); 20 C.F.R. § 404.1527(e)(2)(ii) ("[T]he administrative law judge must explain in the decision the weight given to the opinions . . . of any treating, non-treating and non-examining sources. . . .").

In *Wade v. Astrue*, 268 F. App'x 704, 706 (10th Cir. 2008) (unpublished), the Commissioner argued that the ultimate weight assigned to the opinion of a treating physician was "implicit" where the ALJ's RFC determination appeared to give the physician's opinion some credence. The *Wade* court rejected this argument, stating that the "ALJ herself provided no such analysis." *Id.* Further, "the ALJ discussed none of the [Section 404.1527(d)] factors and made no [specific] finding as to weight." *Id.* The *Wade* court concluded:

> [w]e cannot simply presume the ALJ applied the correct legal standards in
> considering [the treating physician's] opinion. We must remand because we

> cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician's opinion.

*Id.* (quotation omitted).

In this matter, the ALJ failed to state what weight, if any, she afforded to either Dr. Wong or Dr. Lucas's medical opinions.  (*See generally* Tr. 12-26.)  Rather, the ALJ merely stated Dr. Lucas's opinion "is not credible or persuasive."  (Tr. 21.)  Similarly, the ALJ merely stated Dr. Wong's opinion is "less credible."  (Tr. 23.)  While the Court is not passing judgment on the proper weight that should be accorded to Plaintiff's treating physicians' medical opinions, the ALJ's failure to articulate the weight given to the various medical opinions constitutes reversible error and Defendant's decision will be vacated and the case remanded on this basis.  *See Hamlin*, 365 F.3d at 1215; *Jensen*, 436 F.3d at 1165; *Winfrey*, 92 F.3d at 1019.

Further, the Tenth Circuit has held that "[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion*.'"  *Langley*, 373 F.3d at 1121 (emphasis in original) (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)); *see also Garcia v. Barnhart*, 188 F. App'x 760, 764 (10th Cir. 2006) (unpublished) ("This court has made it clear that when an ALJ rejects a medical opinion . . . based on his speculation that the doctor was unduly swayed by a patient's subjective complaints, the ALJ deviates from [the] correct legal standards and his decision is not supported by substantial evidence") (citation omitted).  In this matter, the ALJ impermissibly rejected Dr. Wong's opinion, in part, on her speculation that it "may have been influenced by Dr. Lucas."  (Tr. 23.)  Similarly, the ALJ impermissibly rejected Dr. Lucas's opinion, in part, on her speculation that "Dr. Lucas'[s] opinion is a well-meaning but misguided attempt to assist the claimant in

obtaining benefits rather than an objective evaluation of the claimant's impairments and limitations." (Tr. 21-22.)

**IV.    CONCLUSION**

Based on the foregoing, the Court:

(1)    VACATES Defendant's denial of disability insurance benefits and supplemental security income;

(2)    VACATES the in-court hearing set for October 1, 2015; and

(3)    REMANDS to Defendant for further proceedings as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

DATED this 11th day of September, 2015.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge